Filed 9/22/21  In re Donovan O. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re DONOVAN O., et al., Persons Coming Under the Juvenile Court Law. | B311106 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP06979AB) |
| Plaintiff and Respondent, | |
| v. | |
| O.O., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rashida A. Adams, Tamara Hall, Judges. Affirmed.

John L. Dodd & Associates and John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

O.O. (father) appeals from a juvenile court exit order that granted sole legal and physical custody of his two children to their mother, Gloria K.-O. (mother). We find no abuse of discretion, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Detention

Father and mother were married in 2018 and are the parents of twin boys, Donovan O. and Dominic O., who were born in August 2019. The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in October 2019 when mother reported to law enforcement that father had knocked her to the ground and kicked her during an argument. A children's social worker (CSW) interviewed mother, who said that on October 1, after she accused father of seeing another woman, father pushed her to the floor and kicked her in the ribs, causing her to bleed vaginally. A week later, mother and father argued about how to make the babies' formula, and father grabbed mother's wrist and twisted it while he was holding one of the babies. Mother also described an incident in 2018, before the children were born, in which father had thrown mother into the street and hit and punched her.

Father denied ever physically assaulting mother, but said mother sometimes kicked him. He also accused her of using cocaine daily. Mother appeared shocked by the accusation of cocaine use and believed father's accusations were retaliatory.

2

On October 25, 2019, DCFS removed the children from father.

On October 28, 2019, mother applied for a temporary restraining order against father. In her application, mother said that on October 13, father had come to the family's apartment; when he could not find the paperwork he was looking for, he verbally assaulted mother, threatened to kill her, and then bathed the babies in a very aggressive manner, saying that he was not going to tolerate mother's behavior any longer. Mother begged him to put the children down and take a few minutes to calm down, but he instead pushed mother out of the way and continued roughly handling one of the babies. When mother attempted to pick up the other child, father chased her out of the house and threatened to damage her car. He subsequently kicked her car, leaving a large dent in it.

On October 28, 2019, the superior court issued a temporary restraining order protecting mother, the children, and the maternal grandmother from father.

B. *Petition; Jurisdiction and Disposition*

On October 29, 2019, DCFS filed a petition alleging that mother and father had a history of engaging in violent altercations in the children's presence, as follows: On October 1, 2019, father pushed mother and kicked her stomach; on October 9, 2019, father grabbed and twisted mother's wrist while holding one of the children in his arms; in November 2018, father threw mother to the ground and struck her. Father's violent conduct, and mother's failure to protect the children by allowing father to live in the home, was alleged to give rise to juvenile court

3

jurisdiction pursuant to Welfare and Institutions Code[1] section 300, subdivisions (a) and (b) (counts a-1 and b-1).

On October 30, 2019, the juvenile court ordered the children detained from father and released to mother. On January 14, 2020, the court struck the language in the petition alleging mother's failure to protect, and otherwise sustained counts a-1 and b-1 of the petition. The court ordered the children to remain placed with mother until father obtained DCFS-approved housing; thereafter, the parents would share physical custody under DCFS supervision. The court further ordered father to attend a 26-week domestic violence program, a parenting class, and individual counseling to address case issues, including conflict resolution, and it ordered mother to drug test on reasonable suspicion of drug use, and to attend an anger management class and individual counseling.

On March 25, 2020, DCFS reported that the children continued to reside with mother, and father visited with the children once per week at the DCFS office. Mother and father reported they were in conjoint counseling and hoped to reconcile. Father had completed parenting classes, had enrolled in a domestic violence program, and was on a waiting list for individual counseling. Mother had completed parenting classes, was enrolled in weekly individual counseling, and was participating in domestic violence/anger management classes.

C.    *Supplemental Petition*

In a July 2020 status review report, DCFS reported that the children continued to reside with mother, and father

---

[1]    All subsequent statutory references are to the Welfare and Institutions Code.

continued to have regular visits with the children. Mother was continuing to participate in anger management classes and individual counseling. Father had almost completed a 26-week domestic violence program, but had attended only a few sessions of individual counseling. Mother and father had been participating in couples counseling and hoped to reunify and live together with the children.

On June 26, 2020, the CSW visited mother and the children at home. Mother appeared to be very anxious and the CSW observed a bruise on her left arm. When the CSW asked what had happened, mother began to cry and said father had hit her. She went on to say that during the first week of June, father had punched her with a closed fist on the back of the shoulder after she asked him about his individual counseling. Mother could not move or lift her arm for a week and was diagnosed with a sprained rotator cuff. Then, on June 15, mother met with father outside the family's apartment to give him some of his clothing. Father got angry with mother, took a belt from the trunk of his car, and struck her ankle with it. Finally, on June 21, father came to pick up the children, and mother asked where he was taking them. Father was angered by the question and punched mother on her arm, causing bruising. He then left without the children. Mother said she had genuinely believed that father was making positive changes as a result of the therapy and parenting classes, but she now saw that father had not changed. The CSW photographed the bruises on mother's arm and ankle, and subsequently obtained mother's medical records, which showed mother had gone to urgent care on June 9 and had been diagnosed with a labral (shoulder) tear.

The CSW met with father and told him that his future visits with the children would be monitored. Father became very emotional and said mother was lying and was the abusive partner. He denied hitting mother, and he accused her of regularly using crack cocaine.

On June 29, mother obtained a five-day emergency restraining order against father. She said father had been calling her repeatedly during the night from private numbers, but she had not answered any of father's calls or texts.

On July 13, 2020, DCFS removed the children from father's care, and on July 15, 2020, it filed a supplemental petition alleging additional acts of domestic violence between mother and father. On July 20, 2020, the juvenile court ordered the children detained from father and placed with mother under DCFS supervision.

On July 23, 2020, the juvenile court reissued a temporary restraining order protecting mother, maternal grandmother, and the children.

D. *Subsequent Jurisdiction and Disposition Hearing*

In September 2020, DCFS reported that mother had completed parenting and anger management programs and was continuing to participate in individual therapy. She did not display any behaviors indicative of drug use and had tested negative for drugs. The family preservation worker who met with mother weekly reported that mother was engaged and consistent, attentive to the twins, and asked questions indicating her understanding of the learned content. Father had completed a parenting program and most of his domestic violence classes, but had attended only a few individual therapy sessions. According to the CSW, he "displays typical [domestic violence]

6

perpetrator behaviors such as raising his voice at CSW and mother, control over mother, gets angry quickly, and ordered mother to do certain things."

At a September 15, 2020 adjudication hearing, the juvenile court struck the allegation that mother failed to protect the children, and otherwise sustained the amended petition. The court specifically found that father's claims against mother were not credible and appeared designed to detract from his own conduct. It further found that mother's description of three physical incidents in June 2020 were consistent with mother's medical records. Finally, the court found, "It does not take any speculation to conclude that if left without any intervention, this is the kind of conduct which inevitably will take place in the presence of the children, as the parents have been needing to exchange the children regularly for the shared custody, which was the prior disposition order. The father has demonstrated no insight as to his behavior, denies it. This is the type of conduct which places the children at substantial risk of harm."

As to disposition, the court ordered the children removed from father and placed with mother. The court further ordered father to participate in a 52-week domestic violence program, and ordered mother to participate in a domestic violence victims support group. Father was granted monitored visits with the children.

### E. *Termination of Dependency Jurisdiction*

In March 2021, DCFS reported that mother had made significant progress, had completed all court-ordered programs, and was continuing individual counseling, stating that she was finding it helpful in all areas of her life. There continued to be no suspicion that mother was using drugs or alcohol. Father had

7

completed 35 sessions of a domestic violence program, but had attended only one session of therapy and had stopped responding to the therapist's attempts to speak to him. Mother reported that unless father successfully completed all of his programs and was able to demonstrate that he had internalized the knowledge, she would not consider being in a relationship with him. DCFS therefore recommended that services be terminated with a family law order giving mother sole legal and physical custody of the children.

On March 10, 2021, DCFS, minor's counsel, and mother's counsel requested that the court terminate the dependency proceedings with an order giving mother sole legal and physical custody. Father's counsel urged that the court should order joint legal custody and grant father unmonitored visits with the children.

After hearing argument, the court ordered dependency jurisdiction terminated and granted mother sole legal and physical custody. It explained that its ruling was based on the continued incidents of domestic violence between mother and father, and father's failure to fully comply with the requirements of his case plan by engaging in individual counseling. The court ordered that father's most recent case plan be attached to the juvenile custody order, and it stated that father "can seek modification of this court's order in family law court once he has completed the 52-week domestic violence counseling and the individual counseling."

A final custody order was entered on March 16, 2021. Father timely appealed.

## DISCUSSION

Father does not challenge the grant of sole physical custody to mother, but he urges that granting mother sole *legal* custody was an abuse of discretion because "there was no substantial evidence father had not participated in any decisions concerning the children or could not do so in the future." For the reasons that follow, father's contention lacks merit.

" 'When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 203; § 362.4.) We review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody order pursuant to section 362.4 for an abuse of discretion "and may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

It is well-established that the family law presumption favoring joint custody does not apply to juvenile court custody orders entered upon termination of jurisdiction. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711–713.) To the contrary, " '[w]hen making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child. [Citations.] Furthermore, the court is not restrained by "any preferences or presumptions." [Citation.] Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in

9

the child's best interests for a variety of reasons. [Citation.]' ([*In re Nicholas H.* (2003) 112 Cal.App.4th 251], 268.)" (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102–103.)

Based on the evidence in the record and the juvenile court's factual findings, the court did not abuse its discretion by awarding mother sole legal custody of the twins. As DCFS notes, the court sustained a dependency petition after three separate incidents of domestic violence between the parents, at least two of which were provoked by mundane household disputes. In the months that followed, while the family was under DCFS supervision—and *after* father had completed most of a 26-week domestic violence program and conjoint counseling with mother— father hit mother three more times, once so severely that she required medical attention. Again, at least some of the incidents appeared to be prompted by routine discussions intrinsic to co-parenting. As the juvenile court noted, father continued to show no insight into his behavior, instead blaming mother and accusing her of misconduct. Under these circumstances, the juvenile court did not abuse its discretion by concluding that allowing father to jointly make parenting decisions with mother was likely to lead to further incidents of violence that would put both mother and the children at risk.

Father contends that the juvenile court's order was irrational because "there is no nexus between the fact father had not completed individual counseling and *legal* custody, which is the right to participate in decisions concerning the children." We do not agree. If father could not calmly engage with mother about how to make baby formula or his plans for an outing with the children, there is little possibility that he could safely discuss and reach agreement with mother about more significant co-

parenting matters, such as how to treat the children's future illnesses or injuries, or where and at what age to enroll them in preschool.  Father was ordered to engage in individual counseling *specifically* to help him improve his conflict resolution skills, and thus there was a direct nexus between his failure to engage in individual counseling and the juvenile court's custody order.

## DISPOSITION

The juvenile court's order granting mother sole legal and physical custody of the children is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



EGERTON, J.



HILL, J.*

---

\*      Judge of the Santa Barbara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11